DAVID A. HENDERSON et al.

*v.*

JOSEPH G. CHAMPION et al.

[Submitted June 9th, 1914.   Decided June 30th, 1914.]

1. The right to enforce a building restriction, incorporated in all the deeds given by the owner, who was improving and developing a tract according to a general building scheme, inures to each grantee as members of a class, and they may join in a suit to enjoin a breach by other grantees of the covenant, the wrong being common to them all.

2. An objection for misjoinder of parties, first made on final hearing, will be disregarded, where no injustice will be done the parties by the decree.

3. Where an owner, improving and developing a tract pursuant to a general building scheme, executed deeds of parcels containing building restrictions—*Held*, that the restrictive covenants were made for the benefit, not of the grantor alone, but of all who, as purchasers, participated in the project, and they could sue to restrain a breach thereof, though the deeds stipulated that the grantee covenanted with the grantor not to violate the restrictions.

4. A building restriction provided that no building shall be erected within twelve feet of the lot line facing the street or within four feet of the side lines of the lot, embodied in all deeds of lots of a parcel improved and developed pursuant to a general building scheme—*Held*, that the side line of a corner lot is a "line facing the street," and the erection of a building nearer than twelve feet from this side line is a violation of the covenant. Also *held*, that facing the building on the side line, not within the restricted area, is not a violation of the covenant.

5. Where the right to enforce a building restriction is doubtful, equity will deny injunctive relief.

*Messrs. Bleakly & Stockwell,* for the complainants.

*Mr. William B. Davis* and *Mr. Herbert A. Drake,* for the defendants.

BACKES, V. C.

The object of this bill is to enjoin the breach of a restrictive covenant. The Ocean City Gardens Company reclaimed a tract of waste land adjoining Ocean City, in Cape May county, and subdivided it into streets, blocks and lots, according to a plan thereof filed with the clerk of that county. For the purpose of improving and developing the tract, a general building scheme was formulated and by covenants incorporated in all of its deeds to purchasers, one of which reads as follows:

"No building of any description whatever and no porch, fence or other structure of any kind, shall at any time be erected on or over the lots hereby conveyed within twelve feet of the lot line facing the street, or within four feet of the side lines of said lot (excepting where a party may own two or more contiguous lots, in which case a dwelling or hotel may be erected on any part of the lot or lots the owner thereof may desire without regard to the intervening line or lines; provided the same is not built within four feet of the outside lines of said contiguous lots, nor within twelve feet of the lines thereof facing the street)."

There are others which have no bearing on this dispute. The four complainants own, separately, lots in blocks 9 and 10, fronting on Bay road. Block No. 9 is bound by Bay road and Simpson road, Battersea road and North street, parallel streets, respectively. The defendant owns six adjacent lots in block 9; three front on the easterly side of Bay road and three on the westerly side of Simpson road, abutting in the rear, and are numbered on the map as 901, 902 and 903; 942, 943 and 944. Lots 901 and 944 are bounded on the southerly side of North street. The complainants and defendant hold immediately from the Gardens company, and all of the deeds contain the restrictions above quoted, except that buildings, &c., on the lots fronting on the westerly side of Bay road, are restricted to twenty instead of twelve feet from the street. On lot 903, facing Bay

road, and lot 942, facing Simpson road, being the lots furthest from North street, the defendant erected two dwelling-houses, in compliance with the restrictions. The remaining four lots he divided transversely into six lots, and on two built houses, facing North street four feet from the street line, but more than twelve feet from either Bay or Simpson roads, which constitute the breach complained of. A demurrer *ore tenus* in bar of a recovery was interposed and three grounds were assigned.

The first is that there is no such unity of interests as would justify a joint action by separate lot owners. In pointing out the instability of this objection, it need only be suggested that the right to enforce the covenant inures to each of the complainants as members of a class who may join in seeking redress of a wrong which is common to them all. *Marselis et al.* v. *Morris Canal and B. Co., 1 N. J. Eq. 31.* Besides, an objection for misjoinder of parties, first made on final hearing, will be regarded as immaterial where it appears that no injustice will be done the parties by the decree. It should have been pleaded. *Story Eq. Pl. § 544.*

The next ground is that the covenant is personal to, and enforceable only by, the defendant's grantor, the Ocean City Gardens Company. The principle, that uniform restrictive covenants regarding improvements, as a part of a community scheme, are made for the benefit of all who, as lot owners, participate in the project, has been so firmly established by numerous authorities both in this country and England that in this day it is not open to serious discussion. *De Gray* v. *Monmouth Beach Club House Co., 50 N. J. Eq. 329; Morrow* v. *Hasselman, 69 N. J. Eq. 612; Barton* v. *Slifer, 72 N. J. Eq. 812.* And, indeed, the defendant does not question it, but he urges that the rule is not applicable because of a subjoined limitation in all of the deeds which he argues vests all interest in the covenants absolutely in the grantor. It reads:

"The description by metes and bounds herein set forth shall be conclusive upon the parties, their heirs, successors and assigns, and shall never be construed so as to enlarge said description or embrace land or rights in land not within said metes and bounds."

It does not so impress me. The stipulation simply defines the exclusive construction to be given to the description of the land as contained in the deed and leaves unimpaired the rights which flow to other lot owners from the covenant which, as Chief-Justice Beasley said, in *Brewer* v. *Marshall, 19 N. J. Eq. 537,* are enforced "upon the principle of preventing a party having knowledge of the just rights of another from defeating such rights, and not upon the idea that the engagement enforced created easements or are of a nature to run with the land." Moreover, the defendant fails to accord the proper significance to be given to a further covenant which reads:

"And the said party of the second part hereto (defendant) for himself, his heirs, executors and administrators and assigns, doth hereby covenant, promise and agree to and with the said party of the first part hereto (common grantor) its successors and *assigns,* not to violate nor fail to comply with any or all of the above-mentioned conditions, restrictions, regulations or provisions, but faithfully to keep and perform the same."

This embraces the complainants. They, and all other purchasers of lots, are *assigns,* in the true sense of the word. No one, other than the grantees of the Gardens company, come within that category. So, we have in expressed terms the defendant's agreement that his undertakings should vest beneficially in the complainants.

The remaining point is that the complainants are not damaged. In support of this, it is contended that facing the defendant's houses on, and erecting them four feet from, North street, obstructs neither the light, air or view to the complainant's premises which are on Bay road, "around the corner" from the defendant's houses. The answer to this is that the interdependent covenant of the defendant casts an equitable burden on his land, or raises an equity, in favor of each of the owners of lots on the tract, and this, no matter how remote may be his location. And in this instance there is a very cogent reason for the application of this doctrine. Ocean City Gardens is essentially residential, and broad avenues, from house line to house line, inviting, if not insuring, floral decorations in front of homes, are obviously important factors in its exploitation, the

advantage of which redounds to the whole community, especially in the enhancement of the value of lands within its limits. Can it then be said that a lot owner, however distantly situated, is not materially injured by an infraction of this feature of the general scheme? Equity courts will not refuse relief in cases of this kind unless it clearly appears that the violation complained of will be so harmless that the maxim *de minimis* applies. *Kirkpatrick* v. *Peshine, 24 N. J. Eq. 206; Morrow* v. *Hasselman, supra; Lignot* v. *Jaekle, 72 N. J. Eq. 233.*

We will, therefore, consider whether the erection of the defendant's houses four feet from North street is a violation of that portion of the covenant which provides that no building shall be erected within twelve feet "of the lot line facing the street." The side lines of the defendant's lots, as shown on the map, are undoubtedly those which run at right angles to Bay road and Simpson road and parallel with North street, and while the exterior longitudinal line of lots 901 and 944, bounded by North street, is a side line of these two lots, it is also "the lot line facing the street" and within the prohibition of the covenant forbidding buildings within twelve feet. The primary object of the parties, to be inferred from the covenant, as has already been observed, was to keep all buildings and structures that distance away from the highway, and the restriction in that respect in nowise conflicts with nor is it modified or qualified by the provision that buildings should not be erected within four feet of the side lines, because it clearly appears that the purpose of the side line restriction was solely for the benefit of adjoining lot owners. This was the view of Vice-Chancellor Reed in the unreported case of *Waters* v. *Collins (docket 19, p. 426),* referred to by Vice-Chancellor Bergen in *Chelsea Land and Improvement Co.* v. *Adams, 71 N. J. Eq. 771,* in enforcing a covenant "that no building shall at any time be erected within twenty feet of the front property line of any street or avenue;" which, as will be noted, was couched in language much less definite in application than the one now considered. And this, after reflection, seems to have been the construction placed upon his covenant by the defendant himself, for, after the bill was

filed, he moved his houses back from North street a distance of twelve feet, and on the argument claimed immunity from further prosecution. With this altered situation the complainants are not content. They contend that the general scheme, deducible from the covenants in the deeds and the plan to which the deeds refer, contemplates that buildings should be erected with the façade exposed to the street upon which the lot fronts. All that need be said on this score is that I find in neither one anything to this effect binding upon lot owners. The only limitations in the deeds as to buildings relate to their location and a minimum cost. The map, it is true, shows front and side lines of lots, but nothing to indicate that purchasers are required to erect their buildings fronting on the street. The division lines of the lots, as laid down on the plan, point to no such exactions. Rather, the impression gathered from the map is that it was intended as an illustration of the scheme of improvement and for the more convenient identification of the location of the lots by numbers. The side-line restriction in the deeds is, as I have said, for the benefit of adjoining owners, who alone have the right to enforce, or relieve from, its observance. This is manifested by the exception contained in the covenant which provides that in case of the ownership of two or more contiguous lots by one person, the intervening side lines may be disregarded and a building erected over them; from which follows that if one person purchased all of the forty-four lots in block 9, and erected a hotel covering the block, he could face it in a court, with rears to the four streets, or face it upon any one or more streets with the back to the remaining streets, without breaking his covenant, provided he remained beyond the inhibited twelve feet. And, logically, if he owns but one lot, he may build the style of house or as many houses as his land will permit, facing them, to suit his convenience or fancy, so long as they are of the minimum cost and not within the restricted area.

The utmost that can be said in favor of the complainants' contention, on this phase of the case, is that their right to enforce the covenant is doubtful, which leads to a denial of the relief they pray in this respect. *Howland* v. *Andrus, 81 N. J. Eq. 175.*

A decree may be entered granting an injunction restraining the defendant from building on his land, within twelve feet of North street, but issuance of the writ will be withheld until the further order of the court; motion for which may be made whenever the exigency of the case requires. This course is taken because of the insistence of the defendant at the hearing that he has the right to build on each of his six lots now fronting on North street, to within four feet of that street, notwithstanding that he forestalled the complainants by removing the two already built to their present location. The complainants are entitled to costs.